

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JLG:SSA
F. #2025R00294

*610 Federal Plaza*
*Central Islip, New York 11722*

July 11, 2025

By ECF

Honorable Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Mark Behrje
                Criminal Docket No. 25-227 (SJB)

Dear Judge Tiscione:

      On July 10, 2025, a grand jury sitting in this district returned a six-count Indictment, captioned above, charging defendant Mark Behrje with attempted coercion and enticement of a minor, in violation of Title 18, United States Code, Section 2422(b) (Count One) and receipt and distribution of child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1) (Counts Two through Six).  Count One carries ten-year mandatory minimum term, and up to life imprisonment; Counts Two through Six each carry a five-year minimum term and a maximum term of imprisonment of twenty years.

      That same day, the defendant was arrested in connection with these charges at his home in Nesconset, New York.  For the reasons set forth herein, the government respectfully submits that, in this presumption case, because there are no conditions or combination of conditions that will reasonably assure the defendant's future appearance in court and the safety of the community, the defendant should be detained pending trial.

    I.      Summary of Evidence and Charges

          A.   Attempted Coercion of a Minor

      The defendant came to the attention of law enforcement in approximately April 2025, when his electronic communications were recovered from a cellphone belonging to a commercial sex worker, Libo Shi ("Shi"), who had been arrested in connection with an undercover operation in Pennsylvania.  Shi's cellphone, which was searched pursuant to a judicially authorized

search warrant, was found to contain numerous text messages with the defendant,[1] spanning from approximately August 2024 through April 2025. These messages primarily, and extensively, concerned the defendant's stated desire for Shi to provide him with a six-year-old girl to rape.

For example, the defendant stated he was "looking to rape a 6 year old girl." He asked "when will the 6 year old be available?" He explained he "just want[ed] one. You have a pic of her?" In December 2024, Shi provided a phone number she claimed belonged to a "little girl" who "went to Long Island today." Then Behrje described, in great detail, what he wanted to do with this child (below, Behrje's messages are indicated by "U/M"):

> SHI: (631) 394▮▮▮▮ - You contacted this little girl, she went to Long Island today
>
> U/M: when will the 6 year old be available?
>
> SHI: Today
>
> U/M: ok she hasn't responded
>
> SHI: Six year old girl goes to school at 4:00 p.m.
>
> U/M: I texted girl but I am not sure she understands what I need – what I told her was… I need you to want to eat daddies semen need to drink daddies semen very badly not spit it out.. want to lick daddies asshole want to push your tongue inside daddies asshole and also want daddy to put his semen into you so daddy can make another baby that I can rape as soon as it comes out of you
>
> SHI: Yes – Little girls know everything, know what you think
>
> U/M: please make sure the 6 year old girl understands all of that
>
> SHI: Ok
>
> U/M: ok she has to want to put her baby tongue inside daddies asshole like a little girl who is so happy to see daddy wants to taste daddys asshole deep daddy should not offer it she should want to taste it – I guess this wont happen – I am around today tho. But need my little baby – No?
>
> U/M: No little baby today? – I really need a baby girl

In January 2025, Behrje again communicated with Shi regarding his desire to sexually assault a child:

> U/M: I want little very little soo bad
>
> SHI: ▮▮▮▮1 ave
>
> U/M: where is that
>
> SHI: Honey, I'm on my own at this address. I don't have a boss. Would you like to come over? I can spend a lot of time

---

[1] The defendant messaged with the Shi using a phone number ending in 0053 (the "0053 Number"). Law enforcement determined the 0053 Number belonged to the defendant by, among other things, subscriber records and Behrje's own admissions.

2

with you, because I'm speaking for myself. – Flushing

U/M: I wanted very young baby remember?

SHI: Of course, remember. You want a six year old girl. – When you come to this address, there'll be a six year old girl there.
U/M: for real? – you have a pic of her?

SHI: I've sent it to you before.

U/M: you have her with you? – I have to ask is this the girl I met last time in motel or the original girl?

SHI: ███ 41 ave Flushing (New York) – it's another one.

U/M: another girl? – Will you have on next week? And where?

SHI: Yes

U/M: Where

SHI: 144-45 41 ave

U/M: She is a little girl?

SHI: Yes

In February, the following exchange occurred:

SHI: +1 (929)███ – Children's Phones – You need to contact this little girl when you come over tomorrow,

U/M: I hope she is as young as you say she is – *young

SHI: Dad, when are you coming to see me? I'm your seven year old little girl. I miss you so much, Dad. – Is that girl I introduced to you today okay? Are you satisfied?

U/M: She was cute. Didn't like my sperm I side of her though – If you know any very very young girls I can be with I will pay good – Also, I would to spend time with a girl who would enjoy watching videos of very young girls doing many things

U/M: baby – What happened

SHI: There is no little girl now. I will contact you when I have time.

U/M: Ok – I pay very good if you have a very very young girl – when you find one let me know

SHI: 646█ You can contact this little girl. She is very good.

Shi also sent the defendant photos of Asian girls, who appeared to be six years old or younger. Shi denied ever actually arranging for the defendant to meet a child, and claimed she was just "playing" with the defendant.

B. Receipt and Distribution of Child Pornography

Shortly after law enforcement discovered Behrje's messages with Shi, agents and officers of the United States Department of Homeland Security, Homeland Security Investigations ("HSI") obtained a federal judicially authorized search and seizure warrant for Behrje's residence and electronic devices. On April 23, 2025, the warrant was executed, and multiple electronic devices belonging to Behrje were recovered. Additionally, upon being given *Miranda* warnings and signing a written waiver, Behrje stated the following, in substance and in part: that his messages with Shi were just "role play" and "fantasy," and he really only wanted her to find him an adult that would pretend to be a six-year-old child; that he had met with many sex workers, who were willing to "pretend" with him; that at least once, while role playing with a sex worker, he choked her until she passed out; that he wanted sex workers to act like they were six because they

are "innocent" whereas thirteen and fourteen-year-old girls are already promiscuous women; that he called phone sex lines and told them he had a young daughter at home and asked them what he should do with his daughter; and that that he looked at "extreme" pornography (although he assured agents he did not look at child pornography and did not store any on his phone – a claim belied by the later search of his devices, described below).

Despite Behrje's attempts to conceal his criminal online activity,[2] through use of the dark web[3] and a "VM" or "virtual machine" to hide files within his computers,[4] agents uncovered hundreds of videos depicting child sexual abuse material ("CSAM"), that Behrje had both sent and received, including CSAM involving horrific sexual abuse of newborns and children involved in acts of bestiality. Some examples of these videos are described as follows:

1.) A 38-second video depicting an adult male forcefully inserting his penis into an infant child's mouth. The adult male braces the infant's head with one hand while forcing his penis into the child's mouth.
2.) A video file entitled "ass deconstruction hurt" depicting a newborn female baby being penetrated by an adult male in her anal cavity. The male uses his thumb and other fingers to rape her as she screams and cries for the entire duration of the video.
3.) A video file entitled "mommy opens ass" depicting a newborn female baby being penetrated by an adult female in the anal cavity. The female uses her fingers to rape her as she cries for the entire duration of the video.
4.) An approximately two-minute-long video file called "rape baby 2 year" depicting a female baby being penetrated by an adult male in her vagina. The male uses his penis to rape her as she cries and screams for the entire duration of the video.

---

[2] Behrje works for the City of New York as a communications manager, a position with a significant IT component.

[3] The term "dark web" refers to a part of the Internet that cannot be accessed through standard web browsers but requires specific software, configurations, or authorization. Although many users access the dark web for legitimate purposes, because of the anonymity it provides it is also used for criminal activity, including the trafficking of drugs, firearms, weapons of mass destruction, child sexual abuse material, and malware, among other illicit goods and services. *See* https://oig.justice.gov/news/doj-oig-releases-report-fbis-strategy-and-efforts-disrupt-illegal-dark-web-activities.

[4] According to IBM, "a virtual machine (VM) is a virtual representation or emulation of a physical computer that uses software instead of hardware to run programs and deploy applications. By using the resources of a single physical machine—memory, CPU, network interface and storage—VMs enable businesses to run multiple machines virtually (with different operating systems) on a single device. VMs are typically referred to as guests, with one or more "guest" machines running on a physical machine called the "host" machine. VM technology includes virtual servers, virtual server instances (VSIs) and virtual private servers (VPSs)." *See* https://www.ibm.com/think/topics/virtual-machines.

      C.    <u>Additional Criminal Conduct: Production of CSAM</u>

Law enforcement also uncovered a years-long string of communications between the defendant and a woman living in South Africa, that primarily concern the sharing of CSAM and, most concerningly, the woman's sexual abuse of her own children at the direction of the defendant. The defendant instructed the woman on how to use the dark web for CSAM. Agents have determined that this woman does, indeed, have toddler-aged children, and works at a daycare provider. In some of her conversations with the defendant, she states that she has "sold children to be raped before," and discusses selling her own child to the defendant for $3,000.

The government intends to continue investigating this conduct, and anticipates superseding with additional charges against the defendant, for the production of child pornography, in violation of Title 18, United States Code, Section 2251(a) and (e), which carries a 15-year mandatory minimum term of imprisonment, and up to 30 years' imprisonment.

II.    <u>Legal Standard</u>

As noted above, the defendant is charged by indictment with attempted coercion and enticement of a minor, in violation of Title 18, United States Code, Section 2422(b) (Count One), and receipt and distribution of child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1) (Counts Two through Six). These charges each trigger a statutory presumption of detention under 18 U.S.C. § 3142(e)(3), that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *See* 18 U.S.C. § 3142(e)(3)(E) (presumption for offenses involving minor victims under 18 U.S.C. §§ 2252(a)(2) and 2422(b)).

To rebut this statutory presumption, the defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam). If this limited burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant presents a risk of flight. *Id.*

To determine whether the presumptions of dangerousness and flight are rebutted by a defendant, the Court must consider:

    (1)    the nature and circumstances of the crime charged;
    (2)    the weight of the evidence against the defendant;
    (3)    the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history and past conduct; and
    (4)    the nature and seriousness of the danger to the community or to an individual that would be posed by release.

18 U.S.C. § 3142(g). Once a defendant has met his burden of production relating to danger to the community and risk of flight, the presumption in favor of detention does not disappear entirely but remains a factor for the court to consider. *Mercedes*, 254 F.3d at 436.

5

III.     Discussion

Here, in evaluating the statutory factors, it is clear that the defendant cannot rebut the presumption that he poses a danger to the community. The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993). As countless courts have observed, "Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." *United States v. Blackman*, No. 22-MJ-272 (GRB), 2022 WL 843735, at *3 (E.D.N.Y. Mar. 22, 2022) and *United States v. Valerio*, 9 F. Supp. 3d 283, 289 (E.D.N.Y. 2014) (both quoting *United States v. MacEwan*, 445 F.3d 237, 250 (3d Cir. 2006)). This danger exponentially increases where, as here, the defendant displays a demonstrated interest in hands on, live abuse of children. *See Valerio*, 9 F. Supp. 3d at 289 ("Here, defendant not only is charged with dangerous conduct involving the alleged transportation, receipt, and possession of child pornography, but he also is charged with participating in the sexual exploitation of two minors (ages three and six) . . . and is alleged to have committed the conduct with respect to Jane Doe # 1, by email and telephonic communications with a woman in Ukraine, who allegedly sexually exploited her three-year-old daughter at defendant's request in order to send videos of the exploitation to defendant").

The nature and circumstances of the crime charged weigh heavily in favor detention. The defendant discussed raping and abusing young children over the course of months. He also possessed hundreds of videos depicting children—including newborns—being sexually abused in the most egregious manner possible. The weight of the evidence is strong: the government has amassed both the defendant's communications and CSAM material.

The defendant has already proven an unreliable reporter of his own conduct: in his *Mirandized* statement while agents executed a search warrant at his house, he denied possessing CSAM and knowing about the dark web—both claims readily disproved by the evidence found in his electronic devices. The defendant took steps to hide his criminal activity in order to evade law enforcement, including through extensive use of the Dark Web and with a "virtual machine" to secrete files on his computer. Thus, any assurances he might make to the Court about his willingness to abide by conditions if he were to be released should be viewed with skepticism.

The government expects the defendant will argue that less restrictive measures are sufficient to ensure the safety of the community. But, as Judge Bianco aptly observed, "because of a person's ability to use his or her home, a computer, and/or a mobile phone to commit this type of alleged violent conduct, the ability to monitor, to detect, and to prevent such conduct from reoccurring on bail is extremely difficult." *Valerio*, 9 F. Supp. 3d at 289. If the defendant obtains access to electronic devices while on bail, and facilitates the abuse of even one more child, any "proposed safeguards prove too insubstantial as measured against the potentially catastrophic risks." *Blackman*, 2022 WL 843735, at *5. And here, the defendant is a sophisticated CSAM consumer with employment in the IT field, making it much more likely that he will find a way to evade conditions of release requiring him not to use any unapproved electronic devices.

6

Moreover, the defendant's likely position that his extensive chats about raping a six-year-old child were mere "fantasy" does little to rebut the presumption that he poses a significant danger to the community. *United States v. Reiner*, 468 F. Supp. 2d 393, 400 (E.D.N.Y. 2006) ("It is true there is no evidence of [hands on] physical abuse of children by the defendant. However, the overwhelming evidence presented by the government of the defendant's obsession with images and stories about horrific abuse and violence of all kinds against children, combined with the charged possession of child pornography and other evidence . . . creates a real danger to the community that defendant could act on that obsession. In addition, the dangerousness concerns not only relate to potential abuse and illicit activity by the defendant himself, but also to the facilitation of others, through on-line communications, who may be trafficking in child pornography or engaged in sexual or other physical abuse of children.") (vacating order of release and remanding defendant charged with ten counts of possession of child pornography).

Further, at this juncture, the defendant poses a significant risk of flight if released. Both offenses with which the defendant is charged—attempted coercion and enticement and receipt and distribution of child pornography—carry significant penalties. Attempted coercion imposes a mandatory ten-year minimum term, with up to life in prison. Receipt of child pornography carries a statutory mandatory minimum of five years' imprisonment and a statutory maximum of 20 years. 18 U.S.C. § 2252(b)(1). The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk. *See United States v. Jackson*, 823 F.2d 4, 7 (2d Cir. 1987); *United States v. Cisneros*, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

IV. <u>Conclusion</u>

For the reasons set forth above, the defendant should be prevented from continuing to engage in such conduct, electronically or in person. He poses a significant danger to the community if released pending trial, and no combination of bail conditions will reasonably ensure

the safety of the community and the defendant's continued appearance before the Court. Therefore, the government respectfully submits that a permanent order of detention be issued.

                                  Respectfully submitted,

                                  JOSEPH NOCELLA, JR.
                                  United States Attorney

By:                           /s/ Samantha Alessi
                                  Samantha Alessi
                                  Assistant U.S. Attorney
                                  (631) 715-7894

cc:     Glenn Obedin, Esq. (by email and ECF)
         Clerk of Court (by email and ECF)